**FILED**

Date: 01/29/2024 via: email

Clerk, U.S. Bankruptcy
Jacksonville Division

-----------------------------------------------------------------------x

In RE:                                                    Chapter 11

ADAPTIV RESEARCH &                                        Case No. 8:23-bk-04227-BAJ
DEVELOPMENT GROUP, LLC,

                Debtor.

-----------------------------------------------------------------------x

## SEVEN TRADE LLC AND LUXWEAR LTD.'S JOINDER AND OBJECTION TO DEBTOR'S PLAN OF REORGANIZATION, DATED DECEMBER 26, 2023, <u>AND RESERVATION OF RIGHTS</u>

**COME NOW**, Seven Trade LLC ("Seven Trade") and Luxwear Ltd. ("Luxwear," collectively, the "Objectors"), by and through their undersigned counsel, hereby submit this objection (the "Objection")to confirmation of Debtor's Plan of Reorganization, dated December 26, 2023 (the "Plan"), joinder in the objections of the United States Trustee and Subchapter V Trustee, and reservation of rights, and respectfully state in support thereof as follows:

### <u>INTRODUCTION</u>

Adaptive Research & Development Group, LLC (the "Debtor") filed its voluntary petition seeking protection under Chapter 11, Subchapter V, of the Bankruptcy Code on September 25, 2023. On December 26, 2023, the Debtor filed its Plan, along with an accompanying Liquidation Analysis and Projected Income and Expenses.

Objectors are creditors of this Debtor and respectfully request the Court deny confirmation of the Plan because the Plan is not in creditors' best interest and lacks feasibility. *See* 11 U.S.C. § 1128(b) ("A party in interest may object to confirmation of a plan").

**<u>The Plan is not in the best interest of creditors</u>**. The Plan grossly reduces each

creditors' entitlement compared to what it would potentially receive in a liquidation of the company under Chapter 7 of the Bankruptcy Code. The Plan arbitrarily and substantially reduces Debtor's liabilities (i.e. unsecured claims) without justification. The reduced amount is a mere fraction of the total amount claimed by various creditors. The Plan provides no basis that the projected cash flaw can support payment of this magnitude. The Debtor provides no evidence (in contrast to assumptions) that its defunct business can or will revise. Similarly, the Debtor offers no evidence whatsoever to support its lack of collectability of 40% of its accounts receivables in its hypothetical liquidation scenario Accordingly, the Debtor has neither demonstrated feasibility of its plan or that the plan is in the best interests of creditors, as compared to a liquidation. Therefore, it is in the best interests of the creditors for the Court to convert this case to Chapter 7.

**The Plan lacks feasibility.** The baseless profit projections and assumed accounts receivable proposed in the Plan do not evidence sufficient cash flow to fund and maintain both Debtor's operations and obligations. Debtor has no business at the moment, there are no evidence of concrete business opportunities presently being developed, and, as an observation, the need for personal protective equipment since the declared ending of the pandemic stage of Covid by our government has drastically declined. The Plan states offers no evidence to address these challenges. The only real asset Debtor currently possesses is the accounts receivable. However, the Plan again arbitrarily assumes that only 40-50% of the accounts receivable may be collected over the next sixty (60) months. The Plan does not specify how Debtor arrived at this 40-50% estimation and provides no support as to the amount of accounts receivable claimed or the basis for the reduction in collectability. For example, in documents produced the Trustee, Debtor has not reduced any of its demands to its account debtors, but still continues to seek

recovery of entire amounts owed.

For these reasons, and as more fully set forth below, the Court should deny confirmation of the Plan, covert this case to Chapter 7, and grant such other and further relief as this Court may deem just and proper.

<div align="center">

**ARGUMENT**

</div>

## I.   The Plan Is Not In The Best Interest Of Creditors

The Plan must be in the best interest of the Creditors by demonstrating that each creditor "will receive or retain under the plan on account of such claim or interest property of a value ... that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title." 11 U.S.C. § 1129(a)(7)(ii). Satisfaction of this test requires Debtor perform a liquidation analysis demonstrating the value of the Chapter 11 plan consideration is better as compared with the value of its assets in a fast-tracked liquidation, which the Plan fails to do.

In the Plan, Debtor states that "[t]he total amount of the allowed, liquidated claims in this class is expected to be $3,823,110.01." (*See* the Plan, at p. 5). In actuality, the total amount claimed is $22,656,971.55.[1] (*See* Exhibit A, Claims Register). Debtor's arbitrary and gross reduction of its liability is left unexplained. The Plan fails to justify or contemplate this irreconcilable discrepancy.

The Plan's Liquidation Analysis states that "[i]t is assumed that real property would produce 70% of their scheduled values and that the liens secured by those properties would have

---

[1]   This amount is inclusive of Claim No: 1, the $21,787.40 secured claim. However, because Claim No: 6 and Claim No: 7 are claimed by the same creditor with the exact same amount, the amounts claimed were only calculated once.

This amount further raises the question on whether Debtor's petition qualifies under Subchapter V of Chapter 11 of the Bankruptcy Code in the first instance since the debt limit to qualify as "small business" is $7,500,00 under the CARES Act.

to be paid." (*See* the Plan, at p. 12). However, the Liquidation Analysis does not provide the value of the real properties, the amount of secured liens on those properties; or how this 70% valuation is calculated.

Furthermore, the Liquidation Analysis states that the "accounts receivable would produce no more than 40% of their scheduled values." (*Id.*) Again, the Liquidation Analysis does not provide how Debtor arrived at this 40% valuation.

The arbitrary reduction of the claims together in the absence of any evidence to support, with the disingenuous disclosure of assets support a denial of confirmation of the Plan and conversion of the case to Chapter 7.

## II.    The Plan Is Not Feasible

To establish feasibility, the Court must find that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor ... unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11). This requirement "is designed primarily to prevent confirmation of visionary schemes that promise a greater distribution than the debtor or plan proponent could ever attain." *In re JRV Indus., Inc.*, 344 B.R. 679, 683 (Bankr. M.D. Fla. 2006). Courts will consider the following factors when determining if a plan is feasible:

1)    the adequacy of the debtor's capital structure;

2)    the earning power of its business;

3)    economic conditions;

4)    the ability of the debtor's management;

5)    the probability of the continuation of the same management; and

6)    any other related matters which determine the prospects of a sufficiently

successful operation to enable performance of the provisions of the plan.

*See In re D & G Invs. of W. Florida, Inc.*, 342 B.R. 882, 886 (Bankr. M.D. Fla. 2006); *In re SM 104 Ltd.*, 160 B.R. 202, 234 (Bankr. S.D. Fla. 1993) ("section 1129(a)(11) requires the plan proponent to show concrete evidence of a sufficient cash flow to fund and maintain both its operations and obligations under the plan."). While Debtor filed this bankruptcy under Chapter 11, Subchapter V, of the Bankruptcy Code, its proposed Plan still must pass this feasibility test, which it fails to do.

The Plan fails to meet any of the factors. As Debtor boldly asserts in the Plan, the quarterly cash flow "is projected to initially be approximated $0.00 for the first quarter and increase to approximately $371,250.00 per quarter in year five of the plan." (*See* the Plan, at p. 5). The business is presently dormant with no current or pending contracts. The global pandemic stage of COVID-19 has been declared over by the US Government and the heightened public needs for personal protective equipment is largely exhausted, and most cretianly reduced from the heigh of the pandemic, with saturated market supplies. Debtor only has $100.00 on hand. (*See id.* at p.12). The Plan does not address any of these concerns nor proposes any reasonable steps to increase Debtor's market share. The Plan also provides no detail as to how Debtor's current management team can achieve such drastic business growth in the face of its current total lack of business and recent financial failures caused by these very factors that remain unchanged.

In addition to this untenable business growth, the Plan states that the creditors will be paid from the accounts receivable owed to Debtor. (*See id.* at p. 5). However, even within the

Plan, Debtor presents inherently inconsistent amounts for the alleged accounts receivable.[2] Even if the inconsistencies are mere typos, Debtor's presumptuous assertion that it can only recover 40%[3] or 50%[4] of the accounts receivable lacks support.

All of the projections are based on assumptions without any evidentiary basis whatsoever and omits to address Debtor's current financial and operating predicament. There is no evidence that the Debtor has sufficient cash flow to fund and maintain both its operations and obligations under the Plan. Furthermore, the Plan fails to demonstrate an adequate capital structure; it utterly fails to address how Debtor will generate new businesses under the current economic climate; the projected economic conditions lack support; and it plainly ignores the failures caused by the current management team.

The unsupportable assertions and the lack of practical business development make the Plan unfeasible.

## CONCLUSION

**WHEREFORE**, the Objectors respectfully request that the Court deny confirmation of the Plan, covert this case to Chapter 7, and grant such other and further relief as this Court may deem just and proper.

Objectors further reserve the right to amend, supplement, or clarify this Objection should more information become available, or the plan be amended.

---

[2] Debtor states that the collective accounts receivable is $6,254,505.76 minus $500,000, which is $5,754,505.76 in Exhibit "A" Liquidation Analysis of the Plan. (*See* the Plan, at p. 12). Debtor on the next page in footnote 1 of Exhibit "B" states that the collective accounts receivable is $5,854,505.76. (*Id.* at p. 13).

[3] Exhibit "A" of the Plan indicates that "some of the accounts receivable would produce no more than 40% of their scheduled values." (*Id.* at p. 12).

[4] Exhibit "B" of the Plan indicates that "the Debtor is projecting that 50% of the $5,854,505.76 scheduled collective accounts receivables will be collected …" (*Id.* at p. 13).

Dated: January 29, 2024

<div style="margin-left:45%">

COHEN TAUBER SPIEVACK & WAGNER P.C.
*Attorneys for Seven Trade LLC and Luxwear Ltd.*

By: /s/ Kenneth J. Rubinstein

Kenneth J. Rubinstein
Joseph M. Vann
420 Lexington Avenue, Suite 2400
New York, New York 10170
Tel.: (212) 586-5800
krubinstein@ctswlaw.com
jvann@ctswlaw.com

</div>

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on January 29, 2024, a true and correct copy of the foregoing Seven Trade LLC and Luxwear Ltd.'s Objection to Debtor's Plan of Reorganization, dated December 26, 2023, and Reservation of Rights was served via electronic transmission and U.S. Mail to those parties receiving CM/ECF service in this case.

By: /s/ Kenneth J. Rubinstein
Kenneth J. Rubinstein